IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA,   \*

    Plaintiff,
                               \*

                               \*
    v.                      CIVIL NO.: WDQ-09-0520
                               \*

$315,298.52 IN U.S. CURRENCY,
                               \*
    Defendant.
                               \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

The Government seeks to recover $315,298.52 in tax refunds fraudulently obtained by Tracy V. McIntosh.[1] For the following reasons, the Government's motion for summary judgment will be granted.

I. Background

On August 11, 2008, McIntosh filed an Amended Individual Income Tax Return (Form 1040x) with the Internal Revenue Service ("IRS"). Special Agent Genine Furguiele Aff. ¶ 4, Oct. 28, 2008; Govt.'s Reply, Ex. 2 [hereinafter "Amended Return"]. The return--mailed from Clarksburg, Maryland to an IRS processing

---

[1] McIntosh was represented by counsel until July 24, 2009. *See* Paper No. 9 (granting counsel's motion to withdraw). She is now *pro se*.

center in Andover, Massachusetts--amended McIntosh's adjusted gross income from $28,744 to $480,483. Amended Return at 1; Furguiele Aff. ¶¶ 5, 7. The return falsely attributed the additional income to an original issue discount ("OID") paid by GMAC Mortgage, Howard N. Bierman and Frank M. Conaway.[2] Amended Return at 1-2; Furguiele Aff. ¶ 10. McIntosh attached three false Forms 1099-OID--purportedly issued by GMAC, Bierman and Conaway--reporting this income. Furguiele Aff. ¶ 9. Her Amended Return falsely indicated that the entire amount of the OID had been withheld by GMAC, Bierman and Conaway as federal income tax, which resulted in McIntosh's income tax overpayment of $309,575.[3] *Id*. McIntosh requested a refund from the IRS in that amount. *Id*.

On October 10, 2008, the IRS issued a $317,038.57 refund to McIntosh for the alleged $309,203 overpayment and $7,835.57 interest. Furguiele Aff. ¶ 13. On October 17, 2008, McIntosh opened a personal savings account at M&T Bank in Clinton, Maryland and deposited the refund. *Id*. ¶ 15. McIntosh told M&T's assistant branch manager, Marian Taylor, that she had

---

[2] An OID is the difference between a debt instrument's stated redemption price at maturity and its issue price. *See* 26 U.S.C. § 1273 (2006). An OID must be reported to the IRS as interest income. *Id*. § 1275.

[3] The IRS investigation revealed that GMAC, Bierman and Conaway had not reported any payment to McIntosh in tax years 2005, 2006 or 2007. Furguiele Aff. ¶ 13.

received the funds from a trust. *Id*. Several days later, M&T's Regional Security Manager, Roger McMillan, called McIntosh to discuss her deposit. *Id*. ¶ 17. McIntosh referred McMillan to Liesa Marie Butler Ricks, whom McIntosh described as her "financial advisor." *Id*. Ricks told McMillan that the deposit was a refund from the IRS for overpayment of taxes for businesses that McIntosh operated. *Id*.

On October 28, 2008, IRS Special Agent Genine Furguiele sought a seizure warrant for the $317,038.57 deposit. Mot. Summ. J., Ex. 1. The warrant application stated that the funds were forfeitable under 18 U.S.C. § 981(a)(1)(C) as proceeds traceable to mail fraud. *Id*. The warrant was issued and executed the next day. *Id*., Ex. 2. Apparently because McIntosh had withdrawn $2,000, only $315,038.57 was seized. *Id*.

On March 3, 2009, the Government filed a complaint for forfeiture of $315,298.52.[4] Paper No. 1. On April 17, 2009, McIntosh, by counsel, filed an answer. Paper No. 5.[5] On July

---

[4] It is unclear why the complaint seeks $259.95 more than the amount seized from McIntosh's account. McIntosh noted the discrepancy in her opposition, but the Government has not addressed this issue in its reply or provided any evidence supporting forfeiture of the greater amount.

[5] McIntosh did not file a claim with the Court as required by 18 U.S.C. § 983(a)(4)(A) and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Under § 983, "[i]n any case in which the Government files in the . . . district court a complaint for forfeiture . . . any person

3

24, 2009, the Court granted her counsel's motion to withdraw. Paper No. 9.

---

claiming an interest in the seized property may file a claim asserting such person's interest . . . in the manner set forth in the Supplemental Rules[.]" Rule G requires that the claim be filed "in the court where the action is pending" and that it (1) identify the specific property claimed, (2) identify the claimant and state the claimant's interest in the property, (3) be signed by the claimant, and (4) be served on the government's attorney. Although McIntosh's counsel appears to have sent the Government a "Claim Letter," Mot. Summ. J. 2-3, no claim was filed with the Court.

McIntosh's answer is not a claim. Filing a claim and filing an answer are independent requirements. Under § 983, an answer shall be filed "not later than 20 days after . . . the filing of the claim." Rule G imposes a similar requirement. *See* Rule G(5)(b). Further, McIntosh's answer does not identify the property claimed, name her as the claimant, or state her interest in the property. Paper No. 5.

Failure to file a claim may deprive the putative claimant of standing to contest the forfeiture. *See United States v. Ragin*, 1997 U.S. App. LEXIS 11827, at *7-8 (4th Cir. May 21, 1997); *United States v. 328 Pounds, More or Less of Wild American Ginseng*, 347 F. Supp. 2d 241, 249 (W.D.N.C. 2004). Strict compliance with Rule G is generally required, but the court may "in appropriate circumstances . . . depart from [the rule]." *See 328 Pounds*, 347 F. Supp. 2d at 248 (*quoting United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993)). Although McIntosh is now *pro se*, she was represented by counsel when the claim should have been filed. There is no explanation for counsel's failure to file the claim. Thus, these are not circumstances in which departure from Rule G would be appropriate. Because McIntosh has not filed a claim, she lacks standing to contest the forfeiture.

McIntosh's lack of standing is not dispositive. The Government must establish the forfeitability of the property. *See* 18 U.S.C. § 983 (2006). Accordingly, the Court will consider the merits of the Government's motion for summary judgment.

On October 21, 2009, the Government served McIntosh with a request for admissions under Fed. R. Civ. P. 36. McIntosh did not respond to the request within 30 days; thus, the requested admissions are now "conclusively established." *See* Fed. R. Civ. P. 36(b). By failing to respond, McIntosh has admitted, *inter alia*, that she did not receive--and was not entitled to claim--interest and dividends from GMAC, Bierman and Conaway. Mot. Summ. J., Ex. 2 (Pl.'s Request for Admissions ¶¶ 10-13). McIntosh has also admitted that she was not entitled to receive "any portion" of the $317,038.52 refund because the Amended Return was "based on false and misleading information regarding claimed interest and ordinary dividends." *Id*.

On January 19, 2010, the Government moved for summary judgment.

## II. Analysis

### A. Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but

to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[er] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B. CAFRA

Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government must prove that the seized property is subject to forfeiture. *See* 18 U.S.C. § 983(c) (2006). The Government contends that the money seized from McIntosh's account is forfeitable under 18 U.S.C. § 981(a)(1)(C) as "property . . . which constitutes proceeds traceable to" mail fraud in violation of 18 U.S.C. § 1341.[6] The elements of mail

---

[6] Under § 981(a)(1)(C) "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' under . . .

fraud are: (1) a scheme to defraud, (2) use of the U.S. Mail or any private or commercial interstate carrier in furtherance of the scheme, and (3) a materially false statement in furtherance of the scheme.  *See Neder v. United States*, 527 U.S. 1, 25 (1999).  The first element requires proof of specific intent to defraud, which may be inferred from the totality of the circumstances.  *See United States v. Goodwin*, 272 F.3d 659, 666 (4th Cir. 2001).

Here, it is undisputed that: McIntosh mailed a 2007 Amended Individual Income Tax Return from Clarksburg, Maryland to an IRS processing center in Andover, Massachusetts; the Amended Return falsely stated that McIntosh had received additional income in the form of an OID from GMAC, Bierman and Conaway and that the entire amount of the OID had been withheld as federal income tax; McIntosh falsely claimed entitlement to a refund of $309,575; the IRS issued a refund of $317,038.52 to McIntosh; McIntosh deposited the refund into a personal bank account; and McIntosh and her "financial advisor" lied to M&T Bank employees about the origin of the money.  This undisputed evidence

---

18 U.S.C. § 1956(c)(7)" is subject to forfeiture to the United States.  Section § 1956's definition of "specified unlawful activity" includes "any act or activity constituting an offense listed in [18 U.S.C.] section 1961(1)."  Section 1961(1) lists mail fraud under 18 U.S.C. 1341 as an offense.  *See* 18 U.S.C. § 1961 (2006).  Thus, proceeds traceable to mail fraud are subject to forfeiture.

establishes that the money seized from McIntosh's bank account is traceable to mail fraud and is forfeitable under 18 U.S.C. § 981(a)(1)(C). Accordingly, the Government's motion for summary judgment will be granted.[7]

April 13, 2010                                        _____/s/_____
Date                                                        William D. Quarles, Jr.
                                                              United States District Judge

---

[7] As noted above, the Government's complaint requests forfeiture of $315,298.52, but the evidence shows that only $315,038.57 was seized. The Government has not explained the discrepancy. The amount forfeited will be $315,038.57.